## HEARN v. COGSWELL

### No. 819.

Municipal Court of Appeals for the District of Columbia.

Argued July 11, 1949.

Decided Aug. 5, 1949.

Alton S. Bradford, Washington, D. C. (A. Slater Clarke, Washington, D. C., on the brief), for petitioner.

Ruffin A. Brantley, Assistant General Counsel, Washington, D. C. (Ernest F. Williams, General Counsel, Washington, D. C. on the brief), for respondent.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

This case is here on petition to review an order of the Administrator of Rent Control. Petitioner operates the Manchester Apartments which contains 76 units, of which some have single and others double occupancy. The units are furnished and supplied with hotel service. In connection therewith petitioner operates a dining room and furnishes meals to the tenants on a monthly basis. On December 14, 1948, petitioner commenced proceedings before the Administrator for an increase in the maximum rent ceilings under section 4 of the Emergency Rent Act.[1] The record contains one petition, presumably typical of the others, relating to unit 205, which states that said unit was rented on January 1, 1941, at $45 per month and requests that the rent be increased to $52.50 per month on account of increase in operating costs.

The hearing on the petitions was had on February 3, 1949. No report of that hearing is contained in the record but it is apparent from other portions of the record that at the hearing a question was raised as to the Administrator's authority to control the prices charged for meals. The examiner insisted that such charges were subject to control. During the course of the hearing the landlord and the tenants reached an agreement that room rent would be increased $7.50 per month and meal charges would be increased $2.50 per month. The meal charges had previously been fixed by the Administrator at $30 per month and this amount had been raised by the landlord to $35 without prior approval by the Administrator. The examiner stated that he could not approve the compromise agreement without study, but thereafter issued his findings and recommended order, stating that the parties had agreed to a $7.50 per month increase in rent for each unit and recommending that the rent be so increased. Thus the rent of unit 205 was increased from $45 per month to $52.50. This recommended order enumerated the services to be supplied by the landlord but made no reference to the furnishing of meals or the prices to be charged therefor. The order, dated February 18, was stated to be effective March 1.

After the hearing before the examiner but before issuance of his recommended order petitioner filed application under General Order No. 8 for an increase in meal charges from $35 to $37.50 per month, stating that at the hearing before the examiner the tenants had agreed to a $7.50 increase on the rooms, "per individual," with a fixed price of $37.50 for meals. On March 14 this application was approved. On the same day the landlord's attorney wrote the examiner who had presided at the original hearing requesting that the order of March 1 be supplemented to permit a charge of $7.50 per month rent for each additional occupant of any unit, stating that this was in accord with the compromise agreement.

On March 15 the Administrator signed an order setting forth a schedule of maximum rates for each unit on a single and double basis. Thus on unit 205 rates per person were fixed at $52.50 for single occupancy and $30 for double occupancy. The Administrator's order included in the minimum service standard "service of two (2) meals per day six (6) days per week," and fixed the meal rate at $37.50 per person per month. On March 17 copy of this order and schedule was sent by the Administrator's office to the landlord with instructions to follow its provisions.

On April 11 the Administrator sent notice to the landlord and tenants that unless good cause was shown to the contrary prior to April 18 the order of March 15 would be set aside and a new order entered.

On April 15 a hearing was had before a staff member. No witnesses were sworn at this hearing but statements were made by counsel for the landlord, by counsel representing some of the tenants and by various tenants. The staff member took the position, practically at the commencement of the hearing, that the order of March 15 was in conflict with the examiner's recommended order and would have to be revoked. The principal point discussed at the hearing was whether the rent increase of $7.50 per month was applicable per unit or per person. The landlord insisted that the agreement at the original hearing was that each tenant would pay a

---

[1] Code 1940, Supp. VI, § 45—1604.

monthly increase of $10 allocated $7.50 for rent and $2.50 for meals. Tenants of ten units filed a statement that the landlord's interpretation of the agreement was correct, and several tenants also testified to its correctness. No one directly contradicted this position. The examiner at the original hearing was not present on this occasion. The record contains no recommendation or conclusion reached by the staff member but on April 27 the Administrator issued an order which recited that the order of March 15 was improvidently granted because it resulted in an increase of $15 per unit under double occupancy and ordered that the order of March 15 be "set aside ab initio," and further ordered that the order of the examiner of March 1 be effective. The Administrator then signed an order with annexed schedule of rates, similar in form to the order of March 15, which eliminated the double occupancy rates. From the Administrator's order of April 27 this appeal is taken.

■ The Administrator contends that the order of April 27 was entered under section 7 of the Rent Act[2] and is therefore not reviewable by this court because the Act limits court review to orders under section 4. Section 7(b), on which the Administrator relies, provides: "The Administrator shall have authority to promulgate, issue, amend, or rescind rules and and regulations, subject to approval by the Commissioners of the District of Columbia, and to issue such orders as may be deemed necessary or proper to carry out the purposes and provisions of this chapter or to prevent the circumvention or evasion thereof." We doubt that this section authorizes an order in an individual case as it appears to relate to rules, regulations and orders of a general nature for the general administration of the Act. However that may be, we think the order of April 27 was issued under section 4 because it was undoubtedly issued in a section 4 proceeding. If the Administrator's position were correct then in any section 4 proceeding, after time for review of the order had passed, the Administrator could issue an order under section 7 abrogating or changing the section 4 order

and thereby effectively prevent court review of the section 4 proceeding. Court review is not to be forestalled by such a method.

■ The Administrator further contends that his order of March 15 was void and of no effect ab initio. This argument proceeds on the theory that under section 8 of the Act[3] the recommended order of the examiner of February 18 became the order of the Administrator on March 1 because no party sought review of it within the five days limited for such purpose and the Administrator did not on his own motion review it within the ten days limited for that purpose. It is argued, therefore, that the Administrator was without power to enter the order of March 15. This entire argument assumes that the proceeding to adjust the rents was separate and distinct from the proceeding to adjust the meal rates. But it is apparent that while the proceedings were commenced with relation only to the rents the question of meal rates was promptly injected into the proceeding, and that thereafter, from a practical viewpoint at least, the adjustment of rents and meal rates were joint proceedings. The agreement reached at the initial hearing between the landlord and tenants related to both rent and meal charges, and it is obvious that the application for increased meal rates followed as a result of that agreement. The two adjustments were interdependent and one was not complete until the other was reached. This is emphasized by the fact that the examiner's findings and recommended order, while purporting to set forth the service standard in detail, made no reference to the service of meals. If this order were considered the final order of the Administrator, then the landlord was not required to furnish meals but could furnish them at whatever price she saw fit. The Rent Act nowhere expressly authorizes control of meal charges. If, as the Administrator throughout this proceeding claimed, the meal rates were subject to control, such control rests on the premise that furnishing of meals is a privilege or facility connected with the use and occupancy of the housing accommodations

---

[2] Code 1940, Supp. VI, § 45—1607(b).

[3] Code 1940, Supp. VI, § 45—1608.

and therefore a part of the service standard. Until the service standard was completed the rent ceiling could not be completed. Consequently, these proceedings did not reach final shape until March 14 when the Administrator's office adjusted the meal rates. Therefore, review by the Administrator, apparently on his own motion, on March 15, coordinating the rent ceilings and the service standard, including the furnishing of meals at a fixed rate, was timely. The order of March 15, whether or not correct in all details, was a valid order.

The order of April 27 cannot stand. It is apparently based on the hearing of April 15, but that hearing, as stated by the staff member, proceeded on the assumption that if the Administrator's order of March 15 was not in accord with the examiner's order of March 1, then the Administrator's order would necessarily have to be revoked.[4] This assumption was erroneous. The Administrator, as already pointed out, had the right to review the examiner's findings and recommended order and thereupon make his own appropriate order. The Administrator's order of April 27 states that his order of March 15 was "improvidently granted" in that it permitted an increase of $15 per unit under double occupancy, but the Administrator assigned no reason why such an order was improvident, other than to state that the petitioner originally sought an increase of $7.50 per unit. However, since the examiner's finding expressly stated that leave was granted petitioner to amend her petition to conform to the proof, the question is whether the proof at the original hearing justified the increase per unit or per person. The Administrator made no finding on this question in his order of April 27, although his prior order fixing single and double occupancy rates stated that it was done on consideration of pertinent data.

Section 9 of the Rent Act[5] authorizes the Administrator at any time to res-cind, modify, or set aside a section 4 order, and if the order of March 15 was erroneous in any respect its errors may be corrected in a proper proceeding. But a section 4 order cannot be summarily set aside as was done in this case and a new order entered without consideration of the evidence offered in support of the petition. All section 4 orders, original or otherwise, must be based on and supported by evidence.

The order of the Rent Administrator of April 27 is reversed.

---

[4] The decision to revoke was apparently reached before the hearing, because the staff member announced early in the hearing, "that order (March 15) simply can't stand." And he later announced that the rent that should be collected was the rent stated in the examiner's order. The authority of the staff member to ignore the unrevoked order of the Administrator is not shown.

[5] Code 1940, Supp. VI, § 45—1609(a).