**BARNABO v. LEWIS et al.**

No. 1061.

Municipal Court of Appeals for the District of Columbia.

Argued May 14, 1951.

Decided June 20, 1951.

Jack Politz and Herman Miller, Washington, D. C., for appellant.

John D. Fitzgerald, Washington, D. C., for appellee.

Ruffin A. Brantley, Asst. General Counsel, Washington, D. C., for Robert F. Cogswell, Administrator of Rent Control, intervener.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Judges.

HOOD, Judge.

Appellant was furnished room and board by appellee for a period of thirty-one months at a rate of $60 per month. Appellant then sued appellee, alleging that he had been overcharged $20 per month and that by reason of the District of Columbia Emergency Rent Act [1] he was entitled to recover double the overcharge, a total of $1240.[2]

Appellee admitted that on January 1, 1941, the freeze date under the rent act, she charged $40 for room and board; that later, without approval from the Rent Administrator, she raised the rate to $60; and that she charged appellant the higher rate during his entire stay. Appellee claimed that the increase was entirely on account of meal charges and had no relation to room rent. The trial court instructed the jury that if they found that the increase charged was for meals alone, then under the law there was no overcharge and their verdict should be for the appellee, but if they found that the increase was for items other than meals then appellant was entitled to recover. The jury returned a verdict for appellee.

Appellant and the Rent Administrator, who has intervened, claim that the instructions to the jury were erroneous and that the jury should have been instructed to return a verdict for appellant. Their position is that when a roomer is furnished room and board for a lump sum, such sum is rent within the meaning of the rent law, subject to rent control and cannot be legally in-

---

1. Code 1940, Supp. VII, § 45–1601 et seq.

2. The period in question occurred prior to June 30, 1950, at which time the rent act was amended so as to decontrol "furnished nonhousekeeping housing ac-

commodations which are rented as rooms without kitchen privileges or facilities for cooking (but not in a suite of two or more rooms)". Public Law 592, 81st Cong., 2d Sess., 64 Stat. 310.

creased except upon order of the Administrator, even though the increase relates only to meal charges.

The rent act fixes, or provides a method of fixing, maximum rent ceilings and minimum service standards for housing accommodations. The act defines housing accommodations, services, and rent as follows:

"Sec. 11. Definitions.—As used in this Act—

"(a) The term 'housing accommodations' means any building, structure or part thereof, or land appurtenant thereto, or any other real or personal property rented or offered for rent for living or dwelling purposes in the District of Columbia (including, but without limitation, houses, apartments, hotels, rooming- or boarding-house accommodations, and other properties used for living or dwelling purposes) together with all services supplied in connection with the use or occupancy of such property.

"(b) The term 'services' includes the furnishing of light, heat, hot and cold water, telephone, elevator service, furnishings, furniture, window shades, screens, awnings, and storage, kitchen, bath, and laundry facilities and privileges, maid service, janitor service, the removal of refuse, and the making of all repairs suited to the housing accommodations or necessitated by ordinary wear and tear, and any other privilege or facility connected with the use or occupancy of housing accommodations.

"(c) The term 'rent' means the consideration, including any bonus, benefit, or gratuity, demanded or received per day, week, month, year, or other period of time as the case may be, for the use or occupancy of housing accommodations or the transfer of a lease for such accommodations." Code 1940, Supp. VII, § 45–1611(a) (b) (c).

In Hearn v. Cogswell, D.C.Mun.App., 68 A.2d 219, we pointed out that the rent act nowhere expressly authorizes control of meal charges, and that if such charges are subject to control, such control must rest on the premise that furnishing of meals is a service supplied in connection with the use and occupancy of the rented quarters. In Hearn v. Cross, D.C.Mun.App., 80 A.2d 285, we held that where separate charges are made for rent and for meals and there was no finding that the meals were supplied as a service or facility in connection with use and occupancy of housing accommodations, the meal charges were not subject to control.

■ As observed, if meal charges are subject to control then they must be considered a service supplied in connection with the use and occupancy of the rented premises. The statute defines services with some particularity, specifying eighteen different items which are included in the general term. It seems to us that had Congress intended that furnishing of meals should be included within the definition of services, it would have specifically said so, as it did with so many other items. Meals are certainly as important as screens, awnings, and other items named in detail, and it is hardly to be assumed that so important an item as meals was overlooked by the framers of the law. It cannot well be assumed that the statute named only those items generally supplied and omitted naming meals because they are supplied in only a limited number of cases. The statute names maid service but no such service is supplied in the vast majority of rented premises. Elevator service is named but most tenants get no such service.

Furthermore, it appears to us that the services, facilities and privileges specifically named set a general pattern which excludes furnishing of meals. The named items have a direct connection with use and occupancy of housing accommodations. Undoubtedly it is a convenience to a roomer to be able to get his meals in the same building in which he lives, but a lack of that convenience would not directly affect use and occupancy of his room. Food and shelter are perhaps the two most important necessities of life but they are generally considered separate and equal. Food is not commonly thought of as a service, facility or privilege connected with use and occupancy of living quarters.

In many instances where room and board are furnished the charge for meals exceeds the charge for the room, regardless of whether the items are charged for sepa-

rately or together. If, because supplied together at one charge, the prices for the meals are to be controlled because the room charge is subject to control, then we have a case of the tail wagging the dog. The Administrator has recognized this problem by his general order No. 8, which requires that boarding houses of a certain class apportion the "rent" into separate charges for room and for meals. He thus attempts to fix a ceiling not on rent for housing accommodations but on the charge for a service and to permit an increase under certain circumstances for that charge. Nothing in the rent law indicates that a separate ceiling is to be placed on a service, facility or privilege.[3]

It may be argued that because "boarding-house accommodations" are specifically included in the definition of housing accommodations, that meals or board furnished at a boarding-house must have been intended to be subject to control. We come back to our first point. If the act intended to control the prices of meals, it was so easy to say so. Many other items were mentioned. Nothing was said about meals. This indicates to us that meals were deliberately omitted from the act and were not overlooked.

It is noteworthy that section 7(b) of the act[4] says: "For the purposes of this Act the term 'rooming or boarding house' means a house in which living quarters are rented by the householder to more than four persons." This definition makes no reference to meals and makes no distinction between rooming house and boarding-house. This lends weight to the conclusion that in including boarding-house accommodations within the definition of housing accommodations, reference was made only to the living quarters there furnished and not to meals.

We conclude that the trial court was correct in instructing the jury that an increase in the charge for meals alone was not a violation of the rent law.

Appellant further argues that from the evidence in the case the jury could not have found that the increase related to meals alone. He says that appellee's own testimony definitely shows that she made the increase not only on account of increase in cost of food and of preparing and serving it, but also because of increased costs of taxes, coal, and other general expenses of operating her house. Some of appellee's testimony supports this contention but, on the other hand, she also testified that the increase was for the meals. From appellee's not too clear, and sometimes apparently contradictory, testimony it was for the jury to determine the truth of the matter. The issue was squarely submitted to the jury and they decided it in appellee's favor. There is no error.

Affirmed.

3. The regulations of the Federal Housing Expediter define services as broadly as our act and include boarding house in the definition of rooming house, but make no attempt to control the price of meals when room and meals are provided together. The regulations require that the total charge for room and meals be fairly and reasonably apportioned and provide for control of the amount apportioned to the room. See Rent Regulation for controlled rooms in rooming houses and other establishments, § 1 and 4(e).

4. Code 1940, Supp. VII, § 45–1607(b).